Babinski v. Kristen Sosnowsky. Ms. Morris. I represent Shannon Walsh, Kristen Sosnowsky, John Fletcher, and Alan Sykes. All four of these individuals are professors at the Louisiana State University Department of Theater. I represent them in their individual and in their official capacities. Andrew Babinski, who was a student in the theater PhD program through the fall of 2019, filed a complaint against these individual professors alleging numerous violations of their constitutional rights. We filed a motion to dismiss based upon these claims being barred by qualified immunity. This appeal is limited to the district court's ruling on qualified immunity with respect to the procedural due process claim. Plaintiff has the burden of demonstrating that the defendants are not entitled to qualified immunity. This court's review is de novo. In order to prove that the conduct of these individuals is not subject to qualified immunity, the plaintiff must prove that their actions were objectively unreasonable in light of clearly established law. I submit to you that their actions were reasonable and that there is no clearly established rule of law which would have notified the defendants that their actions would be considered constitutional violations. The district court's ruling rests upon the district court's finding of a de novo violation by the individuals named as defendants. The court focused on finding unreasonable conduct because there was a report to the police department and the police department found no actionable threat. The finding of no actionable threat by the police department is not relevant to the claims brought against these individuals. Further, the court cited an email from the Office of Student Accountability in which the Office of Student Accountability found no violation of policies and stated that the student could return to the program. This also is irrelevant to the claims made by the plaintiff. While the professors were informed that they were not able to prevent Mr. Bobinski from participating in the program, it's Mr. Bobinski's that resulted in his no longer participating in the program. The court should have focused on the plaintiff's actions. Following receiving a failing grade in a single course, Theater 7923, taught by Shannon Walsh, plaintiff was on academic probation. Academic probation is not . . . How do you understand or what's the articulation of the plaintiff's statement of what the clearly established law was or maybe . . . How do you understand the district court's articulation of what the clearly established law was? With respect to the ruling of the district court, the district court found that there was a de facto expulsion of the student as alleged by the plaintiff. However, the student was not expelled from the program. He was not expelled from the university, but he alleged that the actions of the defendants were tantamount to an expulsion. He voluntarily, following receiving a failing grade, the student appealed the grade through the process and he alleges that the process was not followed as written in the handbook. However, that does not amount to a constitutional violation. Once he received the failing grade, there were other academic sanctions that were attached to that. A student on academic probation can't serve as a graduate assistant and so he lost that right. However, he did not lose the right to attend courses and in fact, in the fall of 2019, the semester after he received the failing grade and was on academic probation, he registered and completed courses in the theater program, which counted toward his PhD. Babinski alleges he has three classes remaining to complete his PhD, but following the fall of 2019, he transferred to the master's program in philosophy, a different department, and that is why he no longer continued in the PhD program. Babinski also alleges that the professors denied him the right to participate in the PhD program because he was not, they refused to teach him. That allegation is conclusory and not supported by his factual allegations. He alleged there's nowhere in his very and was denied access to the course or denied admittance to the course. So it's the action of Babinski that should have been focused on by the court to determine whether or not there was a de facto expulsion and the facts pled by Babinski clearly show that there was no expulsion. He was allowed to attend in the theater department courses the semester following the semester in which he got the failing grade. Then he also transferred to another department, but he never once alleges that he registered for any course that would lead to the completion of his PhD and was denied the ability to participate in that course. So it's Babinski's actions that result in him leaving the program and not any of the defendants. Well, he alleges, I think, that the department was so small in number and that the persons who would have been professors in there were the same people who he complains about, so I'm not trying to . . . anyway. Yes, Judge George, that is a very good point. The theater program is a small faculty in that department. However, he can't prove that he was denied entry into his courses if he didn't register for them. The Office of Student Accountability sent an email which was quoted by the district court in its ruling on 15th page saying that we're not able to prevent him from continuing in the program despite the fact that in his final paper in the course that he failed, he admits that he had very strong language expletives and they were directed at these professors and other students in the class, and that's what led to the paper being reviewed by other offices. The fact that the Office of Student Accountability and the police department did not find any actionable threats does not mean that they shouldn't have been reviewed. That's part of the process, so the court's reliance on the fact that the police department didn't find an actionable threat and the Office of Student Accountability didn't find any reason for the student to be expelled are irrelevant to the claims made by Babinski because the professors were told he can participate in the program, but to participate in the program, you have to pay the tuition, register for the courses, and show up, and he did not do any of those things. He did pay tuition and register for courses, but in a different department, so although he knows he was aware that he would have to register for courses taught by the defendants, he failed to do so, and that's why he could not complete his PhD. There are simply no cases which deal with de facto expulsions. There are cases which deal with expulsions, but again, an expulsion doesn't necessarily rise to the level of a constitutional violation, but this is an even lower standard because this student was allowed to go to the program. He simply chose not to. There are several allegations regarding violation of procedural due process, but they have to remain separate. The grade appeal is one process for procedural due process, but really the court's decision relied upon the de facto expulsion. The process and participated in the process of the appeal. His complaint is that he didn't get a hearing. However, the university policy requires a discussion. The discussion took place by email, and an email discussion is reasonable under the circumstances when he had a paper that the individuals that the professor involved perceived to be a threat. It's not of no moment that the police department didn't think it was a threat sufficient to take action. The professor perceived it as a threat, so she engaged in a discussion via email, and there's nothing to say that a discussion via email is not a discussion, so she did solicit information from the student as well as the professor, and then made her decision, and her decision was to uphold the failing grade, but the failing grade only placed the student who had good grades prior to that on academic probation. What happened after the semester in the fall is really the student's actions. It has nothing to do with the professor's actions, and certainly doesn't rise to the level of being able to deny qualified immunity to these professors who were never alleged to take any action outside the course and scope of their employment as university professors in the theater department, and his registration in the philosophy department shows that he was able to attend the university. He was able to go to another program without any interference. Also, the fall semester in 2019, he has no complaints about the fall semester, which was after the spring semester in which he obtained the failing grade. Your Honor, even if qualified immunity . . . this was a motion to dismiss, so it's based on the allegations in the complaint only. Even if this court finds that qualified immunity wasn't proven by the defendants, the defendants are still entitled to an opportunity to raise that defense on a basis of evidence at the trial that the qualified immunity does bar the claims, and the district court, though it left room for the plaintiff to bring back actions, dismissing them without prejudice, did not leave any . . . did not state that at this juncture, there was no qualified immunity shown, but it could be shown at a later date. So, in the event that this court does not find that procedural due process, the defendants, at a minimum, are entitled to bring evidence on a motion for summary judgment after discovery or at the trial to show that qualified immunity would bar those claims against the individuals. Our cases hold it. Our cases hold it, do they not? They do. It's just the ruling as written by the district court leaves it pretty unclear, so we want that clarification in the event that this court doesn't find that at this stage, qualified immunity is available to the defendants. There are some cases . . . there was one case to the contrary, Canadian hockey case, which we cited, which was unclear, but then subsequent, this court has another case which is more clear that the defendants would be entitled to raise the defenses at a later stage, but we request that if qualified immunity is not applicable at this stage, that it be clarified that the defendants have the right to bring that claim with evidence. Thank you, counsel. We have your argument. Mr. Beers-Rohan. Good morning, Your Honors. May it please the Court. Evan Bajerl on behalf of Mr. Andrew Bavinsky. The origin of qualified immunity is good faith, that a state actor acting in good faith is shielded from liability for conduct that is objectively reasonable. There was no good faith here. The professors knew what they were doing . . . We've never said that that's a subjective test. That injects subjectivity into it. We've never done that. And I understand, Your Honor, but just to color what's happening here is that, as we allege in the complaint, the professors knew that they were unable to do what they did, and getting back to the issue of whether this was an expulsion, this indeed was an expulsion. As we allege at Record on Appeal 191, the first amended complaint states that . . . The start and stop. I mean, we're on the qualified immunity, so we know what the facts are, and so on and so forth. We have plenty of cases where there's egregious conduct, yeah, yeah, but the Supreme Court says, you know, there's no clearly established law, cannot define it at a level of generality, etc. You need to sort of lead off with how and what was the clearly established law. It's about notice to parties, etc., etc. I mean, that's a big feature here, not so much these facts or what the motives of the professors were, and so on and so forth, and the district court, in her opinion, does not, to my eyes, point to anything, so help us understand that. Absolutely, Your Honor. The clearly established law applies to an expulsion. It applies to a suspension. It applies to discipline imposed upon students, and . . . All the cases that are cited in the brief that I read were actual expulsions. The school cases, students were actually expelled. Maybe I missed some, but all the ones I saw, there were actual actions having been taken. So, the idea of . . . We understand what the allegation is, but the question is, what is the clearly established law? What is the articulation? What would be the fair notice, you know, to the defendants, etc.? Well, Your Honor, it's our position that this is, in fact, an expulsion, and the reason that it's an expulsion is because what was left out in the prior decision is that the deans here, Dean Quinn and Dean Sosnowski, after they had a secret meeting in which Mr. Bobinski's fate was decided, they told Mr. Bobinski they had not looked into alternatives, and they, quote, fully expected him to withdraw from the program. That is, by definition, an expulsion, and so we would ask the court in this case to agree with the characterization of the facts, and it's this Court's holding note in Good v. Curtis, which is cited by the professors, that the version of the facts that the plaintiff alleges is what the court has to adopt in the motion-to-dismiss stage. So, here, since we're on a 12B6, the professors can't color the facts in their own way. We are bound by the allegations of the complaint, and what the allegations of the complaint are, that these professors specifically prohibited Mr. Bobinski from continuing in the program for which he was admitted. That is disciplinary in nature, and the clearly established law to that regard relates to discipline imposed upon students. We look at Dixon v. Alabama State Board of Education. That, yes, was an expulsion, but it required notice and an opportunity to be heard. We believe that the situation here is the same, and the reason the situation here is the same is also because what has been lacking, what has been lacking this week, Mr. Bobinski, as to what he did or didn't do, that in some way violates an LSU policy. They took disciplinary action against Mr. Bobinski without telling him what he did. He had a paper due. We don't see the paper, and you got a failing grade on the paper. Ordinarily, that's not thought to be, quote, discipline, but, you know, you fail a course, right? And we agree with that, Your Honor, 100 percent, and if they had only given him a failing grade, this would be a different case. We would not be here, but instead, they took it one step further. They gave him a failing grade. They elevated it to discipline, not merely an academic decision, because they determined whether he could continue in the program or not. That is, in and of itself, discipline. It's not a matter of discipline. It's a matter of what the decision is. And I think that the decision is academic, which is cited by the professors in Eckmark v. Matthews, which is unreported, even says that when the decision is academic, at least notice is required. What's the paper? What is in the record that denotes discipline? You keep saying what was in their minds, but counsel opposites arguing, you know, he was able to re-enroll, and so he's still in school, you know, he pays tuition, etc., etc. I'm just, I understand your argument. I'm just trying to follow what is in here that we're looking at that connotes the different discipline, other than having to infer that from, you know, what's there. Yes, it's 12 v. 6, but still, what's the, you know, he failed the course, right? Correct. Failing that one course, I assume, in and of itself, doesn't bounce you out of school, right? It means you have to take it over or do something else or whatever, whatever, right? Exactly. And, but, but that's the problem. That, that in and of itself states the problem, is that they didn't just do that. And the discipline comes from Record on Appeal 191, where it's a situation Mr. Bobinski was summoned to the dean's offices after the meeting had taken place, where his fate was decided, his future fate to continue in the program had been decided without his input, and they told him, you can't continue in this program. We are not allowing you to continue in this program. We fully expect you to withdraw. And, and I think the district court said it incredibly well, when the district court said the professors should not be rewarded for their creativity in doling out procedurally deficient safeguards. The effect of, of what the professors did in this case is the same thing as discipline. And, and we would argue as we state in the complaint that because it's not just a failing grade, because it's not just an F, and then subsequent actions that allowed Mr. Bobinski to take remedial courses as Judge Stewart, you stated, that's why it rises to the level of discipline. And I think that's the reason that this is a situation that, that comports with this court's history and, and accepted jurisprudence as it relates to, to discipline. And, and the fact of the matter is, regardless of how it's categorized, notice and an opportunity to be heard are foundational when it comes to due process. This court's holding in Dixon v. Alabama State Board of Education, notice and an opportunity to be heard. Goss v. Lopez, notice and an opportunity to be heard. All of these things are so ubiquitous. They are so tantamount to what constitutes due process. Even in an academic setting, in this court's Eckmark v. Matthews. In Shaboon v. Duncan, cited in the professor's brief from 2000 . . . The only problem is you cite all those cases and you're right. They do say what they say on their facts, but they don't inform the unique situations we have here. What's your best case of an implicit expulsion that would fit the putting on notice of defendants about their conduct, etc., etc.? I mean, you read the Supreme Court cases just like we do, in terms of the admonition not to find the right to generally, etc., etc. Sure, Your Honor. I would agree with the district court in this case, where the district court cites to Goss, the district court cites to Dixon v. Alabama, the district court cites to Pham v. Blaylock, the district court cites to Plummer v. University of Houston. I mean, all of these situations, the effect is essentially the same. The student is placed in jeopardy for the continuation. Well, you know, is there any other allegation that they told him that and he just took it at face value and registered in another program? I mean, where's the . . . he didn't appeal it? He didn't say you don't have the right to do that? I mean . . . So, Your Honor, the complaint alleges that Mr. Babinski attempted as much as he could before he ran into the roadblock that was thrown up by the professors. And as we state, he was facing continued pressure from the administration, from the professors, to withdraw. And faced with that pressure, he did what he thought was the only thing that he could do. And again, I think this is a The nature of an expulsion is the inability to continue in a program for which you were admitted. It's immaterial that he was able to transfer to another department. He was admitted, as we allege, he was admitted to LSU in the theater PhD program. And that's what he expected to receive his degree in. I want to also address what the professors noted about the immateriality of the report to LSU PhD in Student Affairs and Accountability. That is very relevant. It's very relevant because it demonstrates that the discipline imposed here was not appropriate. There was no basis for it whatsoever. And so if, as we discuss in Qualified Immunity, the sine qua non, as this court states, is fair warning, it was clear to a reasonable official that when they were told by Student Affairs and Accountability that they could not prevent him from continuing in the program if he paid his tuition, and yet they did it anyway, that coupled with this court's and the Supreme Court's ubiquitous rulings about simply a notice and an opportunity to be heard, those two coupled together are the clearly established law and also show the bad faith on the part of the professors. I think the most important thing for the court to remember is that notice and an interdisciplinary setting is what's required. Even in an academic setting, at least notice. We're still waiting from the professors to tell Mr. Babinski what he supposedly did and how what he supposedly did would result in him not being able to continue in the program. And so for that reason, Your Honor, if the court doesn't have any more questions, I'll simply leave you with this. As the district court so aptly put it, the professor should not be rewarded for their creativity in doling out procedurally deficient discipline. But that's stated aspirationally, what they shouldn't be, you know, allowed to do. You know, we don't have whatever the paper was, but maybe one can say, well, a person shouldn't do whatever this is called, an operational performative paper or whatever that castigates professors, etc., etc., but that still wouldn't necessarily alter the terrain. I mean, yeah, the district court says that, she cites Plummer, but in Plummer, there was an actual cranked-up disciplinary procedure. I'm sorry. I mean, wasn't it? There was, Your Honor, and in Plummer, like in every other case, before discipline was imposed, there was at the very least notice and an opportunity to be heard. Everyone in these prior cases, every single student that was subjected to adverse consequences was at least told why and given an opportunity to present their side of the story, and we're still waiting for that from Mr. Popansky, which is why we feel this falls squarely within this court's precedent. We would ask this court to affirm. If the court doesn't have any more questions, I'll conclude. Thank you. Just to clarify a few things, this was not a disciplinary setting. I don't think anybody suggests that notice and an opportunity to be heard are not part of due process. However, this was not a disciplinary proceeding. This was not an expulsion, and the reason it wasn't is because of the actions of the plaintiff. The plaintiff received a grade, and there was due process with respect to questioning the grade, and the grade stood. He also was allowed to continue in the program, even though the plaintiff alleges he was discouraged or told that it would be hard to continue in the program. He, in fact, registered for and attended courses the following semester, showing that there is no expulsion. There were only three courses he had to complete, and possibly those courses would have been taught by the defendants, but he did not register for the classes, appear for the classes, or asked to be . . . he was never asked to leave the classes because he never was in the classes. The following semester, he went to a different department. What about this conversation, counsel opposite saying, where they told him they expected him to withdraw? Well, we can say that we expect a lot of things to happen, but that is not an expulsion. If he would have registered, as the Office of Student Accountability advised the professors in July of 2019, that if he registered and paid the tuition, he was in the program. He didn't register and pay the tuition after the fall of 2019 for the theater department program. He transferred to the philosophy department, so he abandoned the theater Ph.D. program. It's Babinski's own actions which result in him not completing his Ph.D. He went on and completed another degree, and that, again, shows that he was not expelled from the university. He was allowed to come to the university and take courses. He doesn't allege that he was not allowed to come to the campus or participate in any activity on the campus which would be part of an expulsion. He is the one that abandoned the program. He received notice in the context of what was reasonable with respect to the great appeal. He had written a paper which he, this is quoted in the complaint, included strong language expletives and harsh criticism of various faculty members and peers. And so he admits that he did that, and though the police department did not consider something an actionable threat, they didn't have enough evidence from a criminal standard, it does not then equal that the people who were the subject of this language and harsh criticism didn't perceive that to be a threat. So giving him an opportunity to respond via an email exchange qualifies for what is required in the rule as a discussion. So the means does not in any way deny him due process. He is not alleged that there was any information that he was unable to convey or any evidence that he was unable to present. And so the failing grade stood. But the failing grade is what set all this in motion. It did not result in him being unable to attend courses in that same program. And he still has not come to any action that he took to be able to continue in the program. So for those reasons, the professors are all entitled to qualified immunity on the claim of procedural due process as they are on the other claims. Not allowing . . . the court denying due process on the procedural due process claim is inconsistent with its other rulings and should not stand. So we ask the court to respectfully reverse the Middle District. Thank you for your time today. Thank you. That will conclude the arguments for today.